IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| BRIAN D. PARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 06-0097-CV-W-SWH |
| | ) | |
| JUSTIN C. HUTTIE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Plaintiff filed suit in the Circuit Court of Jackson County, Missouri on December 29, 2005, against defendants Justin Huttie, James Muhlbauer, the Board of Police Commissioners, Angela Wasson-Hunt, James Wilson, Karl Zobrist, Terry Brady and Kay Barnes. A First Amended Petition was filed the next day. The action was removed to this Court on February 2, 2006. This case arises out of the arrest of plaintiff Brian Parris by Kansas City, Missouri Police Officers Justin Huttie and James Muhlbauer on December 30, 2003.

Plaintiff's First Amended Petition contains seven claims: Count I alleges illegal search and seizure against defendants Huttie and Muhlbauer in violation of 42 U.S.C. § 1983; Count II alleges excessive force against defendant Huttie in violation of 42 U.S.C. § 1983; Count III alleges false arrest against defendant Huttie and Muhlbauer; Count IV alleges malicious prosecution against defendant Huttie; Count V alleges assault against defendant Huttie; Count VI alleges unconstitutional policies, practices and usages against defendant Kansas City, Missouri Board of Police Commissioners in violation of 42 U.S.C. § 1983; and Count VII alleges inadequate training and inadequate supervision of Kansas City Police Department officers against defendant Kansas City, Missouri Board of Police Commissioners in violation of 42 U.S.C. § 1983. Pending before the

Court is Defendants' Motion for Summary Judgment (doc. #74).

## I. STANDARDS FOR EVALUATING A MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is granted when the pleadings and evidence show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The burden is on the moving party to show the absence of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The nonmoving party may not rest upon allegations or general denials, but must come forward with specific facts to prove that a genuine issue for trial exists. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). In doing so, all evidence and inferences therefrom are viewed in the light most favorable to the nonmoving party. See Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970).

## II. UNDISPUTED MATERIAL FACTS

The following facts are deemed uncontroverted for the purposes of defendants' motion for summary judgement unless otherwise noted.

1. Plaintiff Brian Parris is a resident of Overland Park, Kansas and resides at 8245 West 123rd Terrace. Plaintiff resided at 727 East Gregory, Kansas City, Missouri at all times relevant to this action. (Defendants' Fact #1)

2. Defendant Justin Huttie was a police officer employed by the Kansas City Board of Police Commissioners ("the Board") at all times relevant to this action. (Defendants' Fact #2)

3. Defendant James Muhlbauer was a police officer employed by the Board at all times relevant to this action. (Defendants' Fact #3)

4. Defendants Angela Wasson-Hunt, James Wilson, Karl Zobrist, Terry Brady, and Kay Barnes are members of the Board sued in their official capacities only. (Defendants' Fact #4)

5. On December 30, 2003, at approximately 2:00 a.m., plaintiff Parris was driving a 2003 Cadillac CTS. (Plaintiff's Fact #3)

6. Defendant Huttie was initially alerted to plaintiff's vehicle by the manner of plaintiff's turn after passing defendants' patrol car. (Defendants' Fact #54) Defendant Huttie turned the patrol car around and followed plaintiff. (Defendants' Fact #55) While following plaintiff, defendant Huttie observed plaintiff make a left hand turn without slowing down and saw him fail to stop at a stop sign prior to making a right hand turn. (Defendants' Facts #56 & #57) Plaintiff began traveling at a high rate of speed. (Defendants' Fact #58) Defendants Huttie and Muhlbauer thought plaintiff was attempting to elude them. (Defendants' Facts #58 & #70) Defendant Huttie also thought plaintiff was attempting to elude them because of the neighborhood of the stop, the time of day and by the way plaintiff was driving. (Defendants' Fact #59) Defendant Huttie thought that plaintiff was trying to stay out of sight. (Defendants' Fact #59) Defendant Muhlbauer thought plaintiff was trying to elude defendants because he believed plaintiff saw the patrol car, after which plaintiff made an abrupt turn and then engaged in several additional turns and traffic violations. (Defendants' Fact #71) The officers were driving over 25 miles per hour in an attempt to catch plaintiff, but plaintiff was pulling away from them. (Defendants' Fact #60)

   Plaintiff disputes defendants Huttie's and Muhlbauer's recitation of the events. Plaintiff alleges he had just finished a dominoes game and was going by a friend's house to see if he was awake. (Defendants' Facts #9 & #10; Plaintiff's Fact #6) Plaintiff was traveling west on 51st Street. (Plaintiff's Fact #4) While stopped at the stop sign at 51st Street and Swope Parkway, a police car and another vehicle passed through the intersection going north on Swope Parkway. (Plaintiff's Fact #4) Plaintiff proceeded through the intersection and made a left hand turn onto Indiana. (Plaintiff's Fact #5) The lights on plaintiff's friend's house, 5124 Indiana, were not on so plaintiff proceeded to 52nd and Indiana where he turned right onto 52nd Street to go home. (Defendants' Fact #11; Plaintiff's Facts #6 & #7) Plaintiff drove west on 52nd Street until he reached Walrond. (Plaintiff's Fact #8) He turned right onto Walrond. (Plaintiff's Fact #8) At the intersection of 51st and Walrond, a police car containing defendants Huttie and Muhlbauer pulled up close behind him. (Plaintiff's Fact #9) Plaintiff turned left onto 51st Street. (Plaintiff's Fact #9) The police car remained at the stop sign. (Plaintiff's Fact #9) While plaintiff was traveling west on 51st Street, he heard a police car approaching him from behind at a high rate of speed. (Plaintiff's Fact #9) Plaintiff pulled to the right of the road to give the police car the right of way. (Plaintiff's Fact #10) Plaintiff did not break any traffic laws the evening of his arrest. (Plaintiff's Response to Defendants' Statement of Uncontroverted Material Facts, #56 & #57)

7. At 2:03 a.m., defendants' patrol car radioed dispatch to report a vehicle traveling at a high rate of speed northbound from 52nd Street and Walrond. (Defendants' Facts #61 & #62)

8. After reporting plaintiff's license information, defendants' patrol car asked the

3

dispatcher to "hold the air." "Hold the air means that nobody talk in the air because its either a tense moment or we don't know the intentions of somebody when we're going to contact - make contact with them." (Defendants' Facts #63 & #64)

9. Defendant Huttie pulled the police car in behind plaintiff and activated the emergency lights. (Plaintiff's Fact #10)

10. Defendant Huttie approached plaintiff's vehicle with his weapon drawn and ordered plaintiff to put his hand out of the window. (Defendants' Fact #13)

11. Defendant Huttie ordered plaintiff to exit the vehicle. (Defendants' Fact #14)

12. Defendant Huttie handcuffed plaintiff and then put his weapon away. (Defendants' Fact #15)

    Plaintiff disputes this fact, contending that defendant Huttie put his weapon away before handcuffing plaintiff. (Plaintiff's Response to Defendants' Statement of Uncontroverted Material Facts, #15)

13. Defendant Huttie's weapon was drawn for thirty seconds to one minute. (Defendants' Fact #65)

14. After plaintiff was secured in handcuffs, defendants' patrol car signaled to dispatch to "clear the air" and reported that "everything's fine, Party in custody." (Defendants' Fact #66)

15. Neither defendant Huttie or defendant Muhlbauer struck plaintiff with their weapon or their hands, used mace or pepper spray, or used any other type of force in arresting him. (Defendants' Facts #16, #17 & #18)

16. Plaintiff did not receive any permanent physical injury as a result of being handcuffed. (Defendants' Fact #32)

17. During the traffic stop, plaintiff told defendants Huttie and Muhlbauer that he had not committed any traffic violations; plaintiff protested the stop and the fact that defendant Huttie had drawn his weapon. (Plaintiff's Fact #14)

18. At the time of the traffic stop, plaintiff alleges that defendant Huttie stated he did not observe the traffic violations of which he later accused plaintiff, because he was driving and watching the road and was not able to see the car. (Plaintiff's Fact #15)

    Defendants dispute this fact. (Reply to Plaintiff's Statement of Material Facts, #15)

19. While at the scene, plaintiff informed defendant Huttie that he would be "pressing

4

charges" as a result of the incident. (Defendants' Fact #36)

20. During the traffic stop, defendant Huttie threatened that he would place a hold on the vehicle requiring a mechanical inspection and that the judge would not let plaintiff get the Cadillac back until the inspection and that there would be tow fees and storage fees and mechanic bills that plaintiff would have to pay. (Plaintiff's Fact #16)

   Defendants do not dispute that defendant Huttie mentioned the possibility of a mechanical inspection of plaintiff's car to reconcile plaintiff's protestations that he was using his blinker with Huttie's observation that plaintiff failed to use the blinker. (Reply to Plaintiff's Statement of Material Facts, #16)

21. Plaintiff was arrested and received a citation for careless driving. (Defendants' Facts #5 & #6)

22. A police department van transported plaintiff to the 63rd Street police station. (Defendants' Fact #37)

23. Defendants Huttie and Muhlbauer ordered plaintiff's vehicle to be towed because there was nowhere to park it legally and safely. Additionally, plaintiff was alone and there was no one to retain custody of the vehicle. (Defendants' Fact #72)

   Plaintiff disputes that the reason for towing the vehicle is as stated. Rather, plaintiff states that his car was towed in retaliation for his questioning defendant Huttie's use of a gun at the traffic stop. (Response to Defendants' Statement of Facts, #72)

24. Prior to the tow, defendant Muhlbauer performed an inventory search of plaintiff's vehicle. (Defendants' Fact #73)

25. Plaintiff's acquaintance, Sonja Sharp, arrived at the police station, picked up plaintiff and remitted payment for the bond. (Defendants' Fact #38) Ms. Sharp paid the bond amount with plaintiff's money. (Response to Defendants' Statement of Facts, #38)

26. Plaintiff paid a tow fee in the amount of $130. (Defendants' Fact #39)

27. Plaintiff's car was in the tow lot for less than one day, approximately ten hours. (Defendants' Fact #40)

28. Plaintiff did not notice any damage to the car when he picked it up at the tow lot. (Defendants' Fact #41)

   Plaintiff disputes this fact contending that it overstates or mischaracterizes plaintiff's deposition testimony. A review of the cited passage (Parris deposition 82:19-23)

5

does not support plaintiff's contention.

29. On March 26, 2004, plaintiff first appeared in court for arraignment on his careless driving citation. (Defendants' Fact #42)

30. Plaintiff entered a plea of not guilty. (Defendants' Fact #43)

31. At the request of defendant Huttie, plaintiff's case was continued to May 14, 2004. (Defendants' Fact #44)

32. Plaintiff appeared in court on May 14, 2004. (Plaintiff's Fact #24)

33. After watching the video tape of the stop, Assistant City Prosecutor Martha Rigby offered to reduce the charge to a no points violation with no fine and Mr. Parris would pay the $25.00 court costs. (Plaintiff's Fact #32)

34. Plaintiff declined the offer. (Plaintiff's Fact #33)

35. The Assistant City Prosecutor dismissed the charge, indicating on the ticket that it was nolle prossed. (Plaintiff's Facts #41 & #43)

36. Plaintiff has never consulted a doctor, psychologist or minister about any injury, physical or mental, as a result of the December 30, 2003 incident. (Defendants' Fact #46)

37. Plaintiff filed a complaint with the Office of Citizens' Complaints (O.C.C.) on March 26, 2004. (Defendants' Fact #47)

38. Plaintiff filled out the complaint form personally at the O.C.C. (Defendants' Facts #48)

39. Thereafter, a detective interviewed plaintiff about his complaint. (Defendants' Fact #49)

40. At no point in the O.C.C. process, does plaintiff remember anyone saying anything or doing anything prejudging his complaint. (Defendants' Fact #50)

    Plaintiff disputes this fact contending that it overstates or mischaracterizes the cited deposition testimony. A review of the cited passages (Parris deposition 121:2-129:19) indicates that plaintiff did not like the way the questions were propounded to him by the detective.

41. Plaintiff received a letter dated August 17, 2004, by mail, from Bryan E. Round, Assistant Secretary-Attorney of the Board, informing plaintiff that there was not

6

sufficient evidence to substantiate plaintiff's claim of inappropriate conduct on the part of the officers. (Defendants' Facts #51 & #52)

Plaintiff disputes this fact contending that it mischaracterizes the content of the letter. (Response to Defendants' Statement of Facts, #52)

42. Defendant Huttie provided a statement to the police department's internal affairs division concerning the events giving rise to plaintiff's O.C.C. complaint. (Defendants' Fact #53)

43. Both defendants Huttie and Muhlbauer successfully completed training in the police department's academy and continued to receive department sponsored training during their employment. (Defendants' Facts #74 & #75)

44. At the time of this incident, the police department had a policy entitled "Towing/Protective Custody of Vehicles and Contents." (Defendants' Fact #77 and Plaintiff's Response to Defendants' Statement of Uncontroverted Material Facts, #77)

45. The towing policy gives the officer discretion in ordering a tow except for a limited class of instances in which a vehicle "shall be towed." The policy requires "good judgment" to be used before allowing a vehicle to remain parked at an arrest zone. (Defendants' Facts #79 & #80)

46. The towing policy stated that "the decision to tow a vehicle will never be made to penalize the owner/operator." (Defendants' Fact #78)

Plaintiff does not dispute what the policy states, but claims that defendants Huttie and Muhlbauer failed to follow this policy. (Plaintiff's Response to Defendants' Statement of Uncontroverted Material Facts #78)

47. At the time of this incident, the police department had a policy entitled "Uniform Traffic Ticket." (Defendants' Fact #81 and Plaintiff's Response to Defendants' Statement of Uncontroverted Material Facts, #81)

48. The traffic ticket policy stated that "an officer may release a violator at the scene after the violator signs the UTT [uniform traffic ticket], if bond is not required." (Defendants' Fact #82)

49. Careless driving was a "mandatory court violation" under the traffic ticket policy. (Defendants' Fact #83)

50. The traffic ticket policy contemplated that bondable offenses required an arrest of the violator and booking at the patrol division. (Defendants' Fact #84)

7

51. At the time of this incident, the police department had a policy entitled "Detaining and Questioning Persons; Arrest; Search and Seizure." (Defendants' Fact #85 and Plaintiff's Response to Defendants' Statement of Uncontroverted Material Facts, #85)

52. The search and seizure policy defined "custodial search/search incident to arrest," in pertinent part, as "the thorough examination of the person's clothing, including the inside of the pockets and other compartment, e.g. coats, hats, belts, shoes, socks, etc." (Defendants' Fact #86)

53. The search and seizure policy provided that when effecting an arrest without a warrant "probable cause must exist prior to or at the time of the arrest." An officer may also arrest without a warrant "any person they see violating or have probable cause to believe has violated any federal law, state law, or city ordinance." (Defendants' Facts #87 & #88)

54. The policy also stated that: "[n]o person will be arrested, booked, or charged unless the officer has probable cause to believe the person has committed a specific crime. Probable cause, to include the facts and circumstances leading to the arrest, must be stated in all reports relating to the arrest and charge." (Defendants' Fact #89)

55. The policy stated that "an arrest without a warrant but based on probable cause can be made in any public place." (Defendants' Fact #90)

56. A custodial search of the arrestee's person "will be conducted on all arrests." (Defendants' Fact #91)

57. Custodial searches are permitted by policy only so long as they do not extend beyond the arrestee's person or immediate presence, and are authorized for the purpose of seizing any weapon or contraband available to the arrestee. (Defendants' Fact #92)

58. The policy provided that a "content inventory is required for the towing and protective custody of a vehicle." (Defendants' Fact #93)

59. At the time of this incident, the police department had a policy entitled "Bonding - General Ordinance and Traffic Violations." (Defendants' Fact #94 and Plaintiff's Response to Defendants' Statement of Uncontroverted Material Facts, #94)

60. The bonding guidelines for traffic stops permit officers to exercise discretion in all but a small class of violations for which policy requires that a cash bond must be posted. (Defendants' Facts #95)

8

61.[1]   On January 29, 2003, Brandon Powell and his passenger Jalal Winbush were stopped near Prospect Avenue.  (Plaintiff's Fact #88)

62.   Mr. Powell was issued a citation for a license plate cover.  (Plaintiff's Fact #91)

63.   During the stop, Mr. Powell and Mr. Winbush were arrested.  (Plaintiff's Fact #94)

64.   Mr. Powell filed a complaint with the Office of Citizen Complaints (O.C.C.) alleging he was stopped for no reason, issued traffic tickets for false charges, had his vehicle towed when he specifically asked the officers to leave it parked where it was and that the officers used discourteous language.  (Plaintiff's Fact #89)

65.   The O.C.C. Analyst sustained the complaint against both officers for giving contradictory reasons for the traffic stop and for towing the car after Mr. Powell asked them not to as a violation of the applicable procedural instruction which directs the officer to give an opportunity to sign an authorization not to tow the vehicle.  (Plaintiff's Fact #100)

66.   The O.C.C. Analyst's findings with respect to Mr. Powell's claims were rejected by Captain Roy True and his "superiors up the chain of command," Chief Easley and the Board.  (Plaintiff's Facts #101, #108 and #109)

## III. DISCUSSION

A.   Illegal Search and Seizure

In Count I, plaintiff claims that defendants Huttie and Muhlbauer illegally searched and seized plaintiff and plaintiff's vehicle in violation of 42 U.S.C. § 1983.  Defendants Huttie and Muhlbauer contend they are entitled to qualified immunity for any actions arising out of the search and seizure of plaintiff and his car.

Qualified immunity shields defendants Huttie and Muhlbauer from suit if their actions, even though unlawful, were "nevertheless objectively reasonable in light of the clearly established law at the time of the events in question."  Rogers v. Carter, 133 F.3d 1114, 1119 (8th Cir. 1998)(citing Anderson v. Creighton, 483 U.S. 635, 638-39 (1987)). To determine whether an official is entitled

---

[1]Defendants dispute Plaintiff's Facts #87 through #109 as immaterial.

9

to qualified immunity, the court makes a two-prong inquiry: (1) whether, after viewing the facts in the light most favorable to the party asserting the injury, there was a deprivation of a constitutional or statutory right; and, if so, (2) whether the right was clearly established at the time of the deprivation such that a reasonable official would understand his conduct was unlawful in the situation he confronted. See Saucier v. Katz, 533 U.S. 194, 201 (2001); Wilson v. Lawrence County, Mo., 260 F.3d 946, 951 (8th Cir. 2001).

Citing Terry v. Ohio, 392 U.S. 1, 25 (1968), defendants Huttie and Muhlbauer concede that in 2003, plaintiff had a clearly established Fourth Amendment right to be free from an illegal seizure and search. (Doc. #75 at 3) A traffic stop is reasonable if it is supported by either probable cause or an articulable and reasonable suspicion that a traffic violation has occurred. See United States v. Smart, 393 F.3d 767, 770 (8th Cir.), cert. denied,125 S.Ct. 2921 (2005). Indeed, "a traffic violation - however minor - creates probable cause to stop the driver of a vehicle." United States v. Foley, 206 F.3d 802, 805 (8th Cir. 2000); United States v. Beck, 140 F.3d 1129, 1133 (8th Cir. 1998).

In this case, the facts preceding the stop of plaintiff's vehicle are in dispute. Defendants Huttie and Muhlbauer claim plaintiff committed numerous traffic violations including speeding, failing to stop at a stop sign and eluding police. (See Fact #6, supra) As evidence in support of the claim, defendants point to the radio dispatch from their police car reporting a speeding vehicle at 52nd Street and Walrond. (See Fact #7, supra) If defendants' version of the events were unchallenged, their claim of qualified immunity would have merit. However, plaintiff contends he did not commit any traffic violations. (See Fact #6, supra) As evidence in support of his contention, he has submitted his affidavit and testified in his deposition that on the evening in question he was

10

not speeding; he came to a complete stop at each intersection; and never failed to use his turn signal. (Deposition of Brian Paris at 57-58) In addition, plaintiff cites to the fact that defendants Huttie and Muhlbauer did not have the lights and sirens activated until after plaintiff had pulled to the side of the road and stopped his vehicle as evidence supporting his version of the events. (See Facts #6 & #9, supra)

At this stage of the proceedings, it is not up to the Court to evaluate the credibility of the witnesses. Viewing the facts in the light most favorable to the party asserting the injury, there is a factual dispute as to whether defendants Huttie and Muhlbauer had probable cause or a reasonable suspicion sufficient to justify a traffic stop of plaintiff's vehicle. Although qualified immunity is a question of law for the Court, where a factual dispute exists, the Court may not be in a position to decide the issue at the summary judgment stage of the proceeding. As the Eighth Circuit recognized in a similar situation in Arnott v. Mataya, 995 F.2d 121, 123-24 (8th Cir. 1993):

> if an officer alleges conduct by the arrestee giving rise to probable cause and those facts are undisputed, the qualified immunity defense is available to the officer. *See id.* (undisputed facts established that Secret Service agents were entitled to qualified immunity).
>
> This does not mean, however, that courts may always decide questions of qualified immunity on summary judgment. If the arrestee challenges the officer's description of the facts and presents a factual account where a reasonable officer would *not* be justified in making an arrest, then a material dispute of fact exists. Where there is a genuine issue of material fact surrounding the question of plaintiff's conduct, we cannot determine, as a matter of law, what predicate facts exist to decide whether or not the officer's conduct clearly violated established law. *Gainor,* 973 F.2d at 1384-85.

In the circumstances of this case, the factual issues in dispute[2] prevent summary judgment as to

---

[2]While the issue of qualified immunity is a question of law for the court, it is frequently intertwined with unresolved factual questions. "Where, as in this case, factual questions prevent a district court from ruling on the issue of qualified immunity, it is appropriate to tailor special

11

Case 4:06-cv-00097-SWH   Document 121   Filed 08/21/07   Page 11 of 20

Count I of the First Amended Petition.

B.     Excessive Force

In Count II, plaintiff claims defendant Huttie used excessive force by brandishing a weapon, handcuffing plaintiff and forcing him into a paddy wagon. Defendant Huttie contends that qualified immunity applies here to shield him from suit. As discussed above, the Court makes a two-part inquiry to determine whether qualified immunity applies.

The Fourth Amendment right to be free from excessive force is clearly established. See Guite v. Wright, 147 F.3d 747, 750 (8th Cir. 1998). Defendants argue, however, that "there is no clearly established law that dictates an officer cannot use force to gain compliance from a suspect whom they believe to have engaged in careless driving and whom they believed was engaged in a course of erratic, elusive behavior." (Doc. #75 at 28)

A claim that police employed excessive force during an arrest is analyzed under the Fourth Amendment standard of "objective reasonableness." Wertish v. Krueger, 433 F.3d 1062, 1066 (8th Cir. 2006). The reasonableness of a particular use of force depends on the circumstances of each case, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham v. Connor, 490 U.S. 386, 396 (1989). Whether an officer's use of force is reasonable is judged from the perspective of a reasonable officer on the scene rather than with the 20/20 vision of hindsight. See McCoy v. City of Monticello, 342 F.3d 842, 846 (8th Cir. 2003). However, "[i]t is clear ... that police officers do not have the right to shove, push or otherwise assault

---

interrogatories specific to the facts of the case. This practice allows the jury to make any requisite factual findings that the district court may then rely upon to make its own qualified immunity ruling." Littrell v. Franklin, 388 F.3d 578, 585 (8th Cir. 2004).

12

innocent citizens without any provocation whatsoever ..." Clash v. Beatty, 77 F.3d 1045, 1048 (7th Cir. 1996).

It is undisputed that defendant Huttie approached plaintiff's vehicle with his weapon drawn, handcuffed plaintiff and put plaintiff in the police wagon upon its arrival. Whether defendant Huttie's actions were reasonable under the circumstances of the case is at issue here, and the facts pertinent to that analysis are in dispute, including whether plaintiff committed any traffic offenses or attempted to evade or elude the police officers. Thus, defendant Huttie is not entitled to summary judgment on Count II of the First Amended Petition.

### C. False Arrest

In Count III, plaintiff claims defendants Huttie and Muhlbauer falsely arrested him in violation of state law. In order to state a claim for false arrest, plaintiff must set forth facts establishing the following elements: (1) restraint of the plaintiff against his will; and (2) the unlawfulness of that restraint. See Blue v. Harrah's North Kansas City, LLC, 170 S.W.3d 466, 472 (Mo. Ct. App. 2005). Defendants do not dispute that plaintiff was restrained against his will. (Doc. #75 at 9) Rather, defendants contend that the restraint of plaintiff was lawful, i.e. defendants Huttie and Muhlbauer had probable cause to seize plaintiff.

As previously discussed, the facts preceding the arrest of plaintiff are in dispute. Defendants Huttie and Muhlbauer claim plaintiff committed numerous traffic violations including speeding, failing to stop at a stop sign and eluding police. If these facts are believed, plaintiff's arrest was lawful. Plaintiff, however, contends he did not commit any traffic violations, and that the stop and his subsequent arrest were without any legal basis.

Defendants further assert that the doctrine of official immunity shields defendants Huttie and

13

Muhlbauer from liability for false arrest. The state law doctrine of official immunity provides that public officials acting within the scope of their authority are not liable for injuries arising from their discretionary acts or omissions. See Kanagawa v. State, 685 S.W.2d 831, 835 (Mo. banc 1985), overruled on other grounds, Alexander v. State, 756 S.W.2d 539 (Mo. banc 1988). Public officials may be held liable for torts committed when acting in a ministerial capacity. Id. A discretionary act requires "the exercise of reason in the adaption of means to an end, and discretion in determining how or whether an act should be done or a course pursued." Rustici v. Weidemeyer, 673 S.W.2d 762, 769 (Mo. banc 1984)(quoting Jackson v. Wilson, 581 S.W.2d 39, 43 (Mo. Ct. App. 1979)). A ministerial act is an act "of a clerical nature which a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed." Id.

Defendants contend that defendants Huttie's and Muhlbauer's action in arresting plaintiff was a discretionary act within the official immunity doctrine. Defendants also argue that whether to stop or arrest an individual; the existence of probable cause; whether force is required to detain a suspect; the amount of force, including the drawing and firing of a weapon; and the disposition of a suspect upon detention are all discretionary acts recognized under Missouri law.[3] (Doc. #75 at 30) Plaintiff does not dispute this point.

There are, however, two exceptions to the official immunity doctrine. The doctrine does not apply to discretionary acts done in bad faith or with malice. See State ex rel. Twiehaus v. Adolf, 706 S.W.2d 443, 446 (Mo. banc 1986). Additionally, the doctrine does not apply to acts done with

---

[3]McBride v. Clark, 2006 WL 581139, *24 (Mo. Ct. App. Mar. 8, 2006); Deuser v. King, 24 S.W.3d 251, 254 (Mo. Ct. App. 2000); Miller v. Smith, 921 S.W.2d 39, 46 (Mo. Ct. App. 1996).

14

arrogant disregard toward the safety of members of the public. See Boyle v. City of Liberty, 833 F. Supp. 1436, 1443 (W.D. Mo. 1993).

Plaintiff argues that the false arrest claim alleges that defendants Huttie and Muhlbauer acted intentionally and with malice in falsely arresting him. "A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another. 'An act is wanton when it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights others.'" Twiehaus, 706 S.W.2d at 447 (quoting Givens v. Sellars, 159 S.E.2d 530, 535 (N.C. 1968)). Bad faith is "a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud." Id. (quoting Catalina v. Crawford, 483 N.E. 486, 490 (Ohio 1984)).

As discussed previously, the facts are in dispute as to whether the arrest of plaintiff was proper. These disputed facts provide a question of fact as to whether defendants Huttie and Muhlbauer acted intentionally and with malice. Therefore, whether official immunity applies is a question of fact which should be considered by a jury. See Shell v. Ebker, 2006 WL 1026982, *11 (E.D. Mo. 2006); Blue v. Harrah's North Kansas City, LLC, 170 S.W.3d 466, 479-80 (Mo. Ct. App. 2005).

Finally, defendants contend that the public duty rule bars plaintiff's state law claims. Under the public duty rule, a public employee may not be held civilly liable for breach of a duty owed to the general public, as distinguished from a duty owed to a particular individual. See Green v. Denison, 738 S.W.2d 861, 866 (Mo. banc 1987). Defendants argue that defendants owed a duty to the public to enforce traffic safety laws. Defendants argue that defendants Huttie and Muhlbauer

15

witnessed plaintiff engage in a series of traffic violations and as a result, after developing probable cause, defendants Huttie and Muhlbauer arrested plaintiff for careless driving. Plaintiff responds that he has not alleged a breach of duty, but is claiming an intentional tort, and therefore, the public duty rule does not apply. A review of the First Amended Petition demonstrates that plaintiff is not alleging that defendants Huttie and Muhlbauer failed to carry out a duty owed to the general public. Rather, plaintiff has alleged an intentional action carried out by defendants Huttie and Muhlbauer. "Such acts go beyond the protection of the public duty doctrine." White v. Int'l Ass'n of Firefighters, Local 42, 738 S.W.2d 933, 938 (Mo. Ct. App. 1987). See also Berger v. City of University City, 676 S.W.2d 39, 42 (Mo. Ct. App. 1984). Thus, the factual disputes prevent this Court from granting summary judgment with respect to Count III of plaintiff's First Amended Petition.

        D.        Malicious Prosecution

In Count IV, plaintiff claims he was maliciously prosecuted by defendant Huttie who issued the traffic ticket to plaintiff. To recover on a malicious prosecution claim, plaintiff must show that: (1) a prosecution was commenced against the plaintiff; (2) the prosecution was instigated by the defendant; (3) the prosecution was terminated in plaintiff's favor; (4) there was a lack of probable cause for the prosecution; (5) defendant's conduct was actuated by malice; and (6) plaintiff was damaged. See Duvall v. Lawrence, 86 S.W.3d 74, 84 (Mo. Ct. App. 2002).

Defendant argues that plaintiff's claim against defendant Huttie fails on the fourth and fifth elements. As discussed throughout this Order, the facts involving the arrest of plaintiff are in dispute. The disputed facts prevent summary judgment on this claim. Plaintiff claims to have committed no violations of law. Further, he alleges that he advised officers at the scene that he

16

intended to file "charges" as a result of the unlawful stop.  (See Fact #19, supra)  Plaintiff further contends that at the scene, defendant Huttie admitted to him that he did not observe the traffic violations as he was driving the car.  (See Fact. #18, supra)  For the reasons previously discussed, these factual issues prevent the Court from granting summary judgment on the basis of either official immunity or the public duty rule.  Therefore, summary judgment is denied as to Count IV of the First Amended Petition.

      E.      Assault

In Count V, plaintiff claims he was assaulted by defendant Huttie when Huttie brandished his weapon at the stop.  An assault is any unlawful offer to attempt to injure another with the apparent present ability to effectuate the attempt under circumstances creating a fear of imminent peril.  See Phelps v. Bross, 73 S.W.3d 651 (Mo. Ct. App. 2002).  In the case of an alleged assault committed by a police officer in relation to an arrest, the police officer may be liable for an assault only when in the performance of his duty in making an arrest he uses more force than is reasonably necessary.  See Neal v. Helbling, 726 S.W.2d 483, 487 (Mo. Ct. App. 1987)(quoting State v. Hines, 128 S.W. 248, 250 (Mo. Ct. App. 1910)).

As discussed previously with respect to the claim of excessive use of force as set forth in Count II, there are genuine issues as to material facts regarding whether defendant Huttie's use of force was reasonable.  This factual dispute precludes summary judgment on Count V of the First Amended Petition.

      F.      Unconstitutional Municipal Customs, Policies, Practices and Usages

In Count VI of the First Amended Petition, plaintiff seeks damages against the Board of Police Commissioners alleging that the unconstitutional municipal customs, policies, practices and

17

Case 4:06-cv-00097-SWH   Document 121   Filed 08/21/07   Page 17 of 20

usages were the "moving forces behind the unconstitutional deprivation of rights set forth in Counts I, II, III, IV and V of this Petition." (First Amended Petition at ¶ 122) Plaintiff may only establish municipal liability under 42 U.S.C. §1983 if the plaintiff demonstrates that his constitutional rights were violated by an "action pursuant to official municipal policy" or misconduct among non-policymaking employees so pervasive "as to constitute a 'custom or usage' with the force of law." Ware v. Jackson County, 150 F.3d 873, 880 (8th Cir. 1998)(quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)). Custom or usage is demonstrated by (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking official after notice to the officials of that misconduct; and (3) proof that the custom was the moving force behind the constitutional violation. Id.

Plaintiff claims his constitutional rights were violated by "the use of pretextual traffic stops without probable cause and retaliatory arrests if a self-respecting citizen dares to question an officer making false accusations." (Doc. #86 at 48) Plaintiff, however, has not provided any evidence of this official municipal policy.

Additionally, plaintiff has not provided evidence of such pervasive misconduct as to constitute a custom or usage with the force of law. While plaintiff alleges misconduct by police officers in an incident involving Brandon Powell and Jalal Winbush, he acknowledges that there was probable cause to stop Powell's vehicle. (See Doc. #86 at 48) Thus, he cannot argue that the Powell incident is evidence of the use of pretextual traffic stops without probable cause. To the extent plaintiff argues the Powell incident is evidence of a retaliatory arrest, one other incident is not enough to prove the existence of a continuing, widespread, and persistent pattern of unconstitutional

18

misconduct by police officers amounting to a custom or usage having the force of law. Thus, defendants are entitled to summary judgment on Count VI of the First Amended Petition.

G. <u>Inadequate Training and Supervision</u>

In Count VII of the First Amended Petition, plaintiff alleges that the officers' actions as described in Counts I through V resulted from the Board's inadequate training and supervision of the police officers. (<u>See</u> First Amended Petition at ¶¶129-133) In order for the Board to be found liable for inadequate training or supervision, plaintiff must demonstrate: (1) the Board received notice of a pattern of unconstitutional acts committed by the subordinates; (2) the Board's deliberate indifference to or tacit authorization of the offensive acts; (3) the Board's failure to take sufficient remedial action to train or supervise the offending subordinate; and (4) such failure proximately caused injury to plaintiff. <u>See</u> <u>Otey v. Marshall</u>, 121 F.3d 1150, 1155 (8th Cir. 1997); <u>Owl v. Robertson</u>, 79 F.Supp.2d 1104, 1114 (D. Neb. 2000). Plaintiff has provided no evidence that the Board has received notice of a pattern of unconstitutional acts committed by defendants Huttie and Muhlbauer in particular or other Kansas City police officers in general.[4] Plaintiff has also failed to offer any evidence of a failure to train or supervise the officers. In fact, the only evidence in the record is evidence that the defendants received training at the police academy and department sponsored training thereafter. (<u>See</u> Fact. #43, <u>supra</u>) Therefore, plaintiff's claim of inadequate training and supervision cannot survive. Summary judgment is appropriate as to Count VII of the First Amended Petition.

---

[4]Plaintiff appears to equate the Office of Citizens' Complaints with the Board. (<u>See</u> doc. 86 at 48) Not only is there no evidence of the relationship of these two entities, but plaintiff has acknowledged that the Powell incident, which was investigated by the O.C.C., was based on a different factual scenario.

## IV. CONCLUSION

For the reasons discussed herein, it is

ORDERED that Defendants' Motion for Summary Judgment (doc. #74) is denied as to Counts I, II, III, IV and V of the First Amended Petition and granted as to Counts VI and VII of the First Amended Petition.

                                                          */s/ Sarah W. Hays*
                                                          SARAH W. HAYS
                                    UNITED STATES MAGISTRATE JUDGE